The final case scheduled for argument this morning is Levin v. American Document Services, No. 19-2938. Mr. Levin? Good morning, Your Honor. If it please the court, my name is Isaac Levin. I'm a plaintiff and my wife is on the other phone. The case here relates to forged documents. As a couple, we acquired the house and we took out the first mortgage and we paid it off in 15 years. Therefore, we had a clear title at that point, 15 years later. And when the children needed money, we kept it free. When children needed money to go to law school, medical school, and so on, we sought a new mortgage because that was the only case that we had available. And we ended up in a bed with a snake of all snakes, with Welch Fargo, seeking a mortgage up to 14% with a six-month adjustment. We did not know what to do with it at the time. We were already in debt and we had to take it and complete the transaction. But then we found out that all kinds of documents came on the record. The first document, is that a sign? Mr. Levin, I assume that you are correct for the moment that Welch Fargo did some fraudulent things and so on. But how did the fact that this mortgage went to somebody else, and then somebody else, and so on, injure you? Wasn't the exact same amount due that was at the beginning? So that all this, though it may have been wrong, in what way did it injure you? Well, at the mortgage meltdown of 2008, it injured us in such a way that when we're supposed to have a 7% or 7.25%, it went up to 10.3% where we lost our entire income because of the events of 2008. And we got injured because we paid until that point. And at that point, if the amount went up, did it go up because there was a new owner or was that in the original mortgage? It was because of the original mortgage because the mortgage was adjustable. It kicked in in the second phase after the first initial two years, it kicked in into 10.3% going upwards according to LIBOR at that time. So it almost went out to double the amount from $2,500 that we originally agreed to pay that includes all the expenses. It went up to over $3,000 and it kept escalating. Mr. Levin? Yes, Your Honor. How is that related to the assignment? If it was already provided for that the rate was adjustable in the original mortgage as Judge Calabresi was suggesting? Well, they did those fraudulent assignments because there was no clear ownership of who owns the mortgage. So they piled up three layers of documents and they claimed that they no assignments. Wouldn't you be in exactly the same position now in terms of how much you owed? I don't know the answer to that, but we never signed anything with Welch Fargo. Nothing at all. We did not know that Welch Fargo is in there. Right. But all I'm saying is that these assignments may have occurred and there was fraud, but the original mortgage, as far as you were concerned, remained the same all the time in terms of the terms. And in fact, you said that the rate went up, but that was a result of the original mortgage, as you correctly pointed out. So I don't understand how you were personally harmed in any way by whatever Welch Fargo did. Well, I apologize for a minute. What really happened here, it was a bait and switch. It's a bait and switch that came in in the last week before signing the mortgage. And on that point, we had no real choice at that time to escape the bait and switch because things were scheduled, a wedding was scheduled, and we could not turn out and tell them to take the mortgage and drop dead, which was really not Welch Fargo because it was undercover with a superior home mortgage. We did not know that we're dealing with Welch Fargo in that instance. So under different circumstances, we simply would have told them, we are bailing out. We don't want that mortgage. Mr. Levin, you've reserved two minutes for rebuttal, I understand. So we'll hear from Mr. Goldberg now and then we'll come back to you, all right? Thank you, Your Honor. Thank you. Mr. Goldberg. Good morning. May it please the court, Fred Goldberg on behalf of American Document Services, Lender Processing Services, DOCS, and Black Knight is the successor to Lender Processing Services. I believe Mr. Brian Tantaleo may be on the phone. He represents Welch Fargo in this matter. I am, thank you. But Mr. Goldberg, you're the only person who is arguing this morning, as I understand it. That is correct. Okay, so why don't you proceed, please? Thank you. Appellant submitted complaint essentially sought to assert claims for damages and declaratory relief against their mortgagee and other parties based upon a foreclosure that has not even taken place yet. It is essentially a wrongful foreclosure case, despite the fact that appellants, as they even said today, concede nonpayment of their mortgage. The claims in the instant action are based upon the theory that the mortgagee of record and holder of the note, Welch Fargo, lacks standing to foreclose upon appellant's home. This is properly a defense that should and has, as a matter of fact, been raised in the pending foreclosure proceeding. Appellants' claims are based upon conclusory allegations that the assignments of mortgage here are void, a nullity, and fraudulent, and that the pending foreclosure is unlawful and illegal. As the court has already commented during Mr. Levin's presentation, the real issue here is standing. Standing comes with two components. There is constitutional standing, which requires an injury in fact, and there's prudential standing, which typically bars a litigant from asserting the rights or legal interests of another non-party in order to obtain relief from injury to themselves. As the court has focused in upon constitutional standing, I will also address that issue. The court has repeatedly rejected cases of this type, asserting claims based upon assignments of mortgage, where the assignments of mortgage, in effect, do not change the obligations of the borrower. Let me ask you a question. You know, Rajaman focused on that, and that's what we've focused on this morning, that the financial obligations didn't change and that there was no perceptible damage to the borrower. But I wonder if there might be circumstances, if you would agree, that there would be circumstances in which a borrower prefers not to do business with a entity or some other reputational concern. Can you imagine that or another kind of injury accruing even if the financial obligations were the same, so that there would be some circumstances in which an assignment could be challenged by a borrower? What Your Honor would appear to be referring to would be something that would occur at loan origination. In the note or in the mortgage, there could be an express agreement that... No, no. But even apart from an express agreement, if the original mortgage lender were a party, for instance, that was very understanding about delays that had a reputation for allowing any kind of mitigation of things and so on, and that's why I went to that particular lender to get my mortgage, because I knew that person's reputation. And then instead, fraudulently, let us assume it is transferred to somebody else, somebody else, somebody else, and the person who gets it is a totally hardline person whom I would not have standing in that situation to say that I was harmed. Then you can argue whether the contract allowed it or didn't allow it, but that goes to the merit. But if the question is standing, don't I have standing to argue that this change has hurt me? My position would be that the borrower under those circumstances would still not have standing because it is a function of the original contractual agreements. If the contracts say no assignment, then they would have standing. If the contracts permit assignment, as they do here... Perhaps, but I mean, let's change to another thing. I use an insurance company, which charges me more than other insurance companies do for the same thing. And I use that insurance company because they have a reputation for responding quickly if there's any harm and not giving me trouble when that happens. If that insurance company were to be able to give my contract... My contract doesn't say anything. Give that to another insurance company and to another one who instead has a totally different reputation about settlement, don't I at least have standing? The question of whether my contract allowed that or not is a different question. That's a question of the merit. Here, the issue is not reputation. The issue is what was agreed to. The Levin's agreed to make certain payments. The Levin's agreed to an adjustable rate mortgage. They failed to make those payments. That is the cause of their injury. It is their own inability to make their payments. These injuries were not caused by any transfer from superior mortgage to any other party. And that is the real focus. The components of constitutional standing are not just injury in fact, but the injury must be fairly traceable to the challenge conduct. And that is what is absent here. There is no link between the assignment and the injury that has taken place. Counsel, did you hear me? Yes. Yeah. So essentially, then please, when I try to ask a question, don't keep talking, please. I'm sorry. I did not hear you. Okay. So essentially, you are saying that on the facts of this case, there are no allegations which would suggest the kind of hypothetical that I gave. That is correct. There are no allegations of reliance that there would be no transfer from superior mortgage. Okay. All right, Mr. Goldbratt, your time has expired. Do you want to have just a last moment to wrap up? Yes. This case is similar to many that this court and courts below it have faced over the last 10 years. It is unfortunate. However, under the circumstances of this case, there are no affirmative claims available. Elevens have their defenses that they can raise or have raised in the pending foreclosure matter. There is no reason for separate litigation. And the case law of this circuit does not permit such litigation. For these reasons, the trial court's judgment should be affirmed. Thank you very much. Mr. Levin, you have two minutes of rebuttal. Yes. We were taken, spending was taken away from us because of what the R&R report said. The R&R report said that we said, we alleged that the plaintiff claims that defendants affected a led transfer of the mortgage to a securitized trust, allegedly in violation of the pooling and servicing agreement. We never said that. And therefore we are in the same position as the regimen. We never said that. That was created by the defendants. We never, there was not even a word mentioning the PSA in any place. We simply showed three invalid, void assignments. Now, whether it's effective or not is a second story. The Supreme Court judge found that that has an effect on the fact whether they can foreclose or not. And in fact, there were additional fraudulent documents that came online and including one that just came up recently. So the creation of documents is at will. Whenever they clouded the house in 2008, when there was a mortgage being paid, it was paid until November. Why would they go ahead and create fraudulent documents when the mortgage is paid and nothing is owed to them as far as late charges or anything of that coin? So assuming that we wanted to sell the house in 2008, in October 2008 or September 2008, we already had a cloud on it. So it's not really, we are really not in the territory of regimen. Regimen complained about the late transfer to the trust, the provision of the late transfer and so on. We don't have the trust to you. And therefore it's fully distinguished. And the fact that they associated us with regimen lacks merit. We do not have a trust in me. We simply said... Yes, thank you very much. Take just a moment. I interrupted you. Please finish your sentence and then we'll close. We simply said that the first assignment, which is void, does not exist and you cannot build a second and third floor on something that is void. If one document is no good, you file the second document. And if the second document is no good, you file the third document. And so you keep piling up and you keep clouding up the property. Even if we wanted to sell it in 2009, we already had cloud on the property. Paying them the balance and selling the house in 2009 was already impossible. We did not know that they're I think we have the arguments. We will take the matter under advisement and try to get you a decision promptly. Thank you. Thank you. We have one more motion appeal on submission this morning, United States versus Mendez number 22066. But we will reserve decision on that after conference. And I would ask the clerk to please adjourn court. Court stands adjourned.